# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TAMMIE SHERELL WARE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:17-cv-01529-JHE |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Tammie Sherell Ware ("Ware") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Ware timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED**.

## I. Factual and Procedural History

Ware protectively filed an application for a period of disability and DIB on August 14, 2012, alleging an onset date of March 10, 2008.[2] (Tr. 314-17). On November 2, 2012, the Commissioner denied Ware's claim. (Tr. 190-94). On November 21, 2012, Ware requested a

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 16).

[2] Ware had previously filed several applications for DIB, all of which were denied. (*See* tr. 117-32, 180-84, 185-89).

hearing before an administrative law judge ("ALJ"). (Tr. 198-99). On December 6, 2013, the ALJ held a hearing. (Tr. 75-116). At the hearing, Ware amended her alleged onset date to February 27, 2010, (tr. 78). The ALJ denied Ware's claim on April 29, 2014. (Tr. 152-74). Ware sought review by the Appeals Council, which vacated the decision and remanded the case to the ALJ to reconsider Ware's residual functional capacity ("RFC")[3] and obtain new testimony from a vocational expert. (Tr. 177-79).

On remand, the ALJ held a new hearing on April 5, 2016. (Tr. 33-74). The ALJ denied Ware's claim again on July 6, 2016. (Tr. 10-32). Ware again sought review by the Appeals Council, but this time it denied her request. (Tr. 1-6). On July 11, 2017, the date on which the Appeals Council denied review, the ALJ's second decision became the final decision of the Commissioner. On September 8, 2017, Ware initiated this action. (Doc. 1).

On the date of the ALJ's second decision, Ware was forty-seven years old, with previous work as certified nurse's assistant and a cleaner/housekeeper. (Tr. 24).

## II. Standard of Review[4]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is

---

[3] "RFC" is explained further *infra* at Part IV.
[4] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

2

reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

"must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Ware met the insured status requirements of the Social Security Act through December 31, 2012, and that Ware had not engaged in substantial gainful activity from her amended alleged onset date through her date last insured ("DLI"). (Tr. 15). At Step Two, the ALJ found Ware had the following severe impairments: obesity; depressive disorder, NOS;

4

anxiety/panic disorder, with agoraphobia; history of multiple hernia repairs; history of spinatus tendinopathy/tendonitis with osteophytes, left shoulder; and possible mild degenerative disc disease. (Tr. 15). At Step Three, the ALJ found Ware does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).

Before proceeding to Step Four, the ALJ determined Ware's RFC, which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined through her DLI, Ware has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she would require a sit/stand option with the retained ability to stay on or at a work station in no less than thirty minute increments each without significant reduction of remaining on task and she can ambulate short distances of up to one city block per instance on flat hard surfaces. She can reach frequently overhead with her non-dominant left hand. She could occasionally climb ramps and stairs but never with her non-dominant left hand. She could frequently balance but only occasionally stoop, kneel, crouch or crawl. The claimant should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operate commercial motor vehicles. She should never be exposed to concentrated dust, fumes, gases or other pulmonary irritants. The undersigned further finds that the claimant would be limited to routine and repetitive tasks and to simple routine work-related decisions. She would be unable to perform at a production rate pace, but could perform other goal-oriented work. She can have frequent interaction with supervisors and co-workers and occasional interactions with the general public. She would be unable to accept constructive non-confrontational criticism, work in small group settings and would be able to accept changes in the work place setting if introduced gradually and infrequently. In addition to normal workday breaks, the claimant would be off-task for about five percent of an eight-hour workday, in non-consecutive minutes.

(Tr. 18).

At Step Four, the ALJ determined Ware has been unable to perform any past relevant work. (Tr. 24). At Step Five, the ALJ determined that, considering Ware's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy

that Ware could perform. (Tr. 25). Therefore, the ALJ concluded Ware had not been under a disability through her DLI. (Tr. 26).

V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ware argues the ALJ erred by failing to discuss the side effects she suffers from her medications. (Doc. 14 at 5). The Commissioner responds that the ALJ implicitly rejected Ware's allegations of side effects when he evaluated her subjective complaints and found them inconsistent with the medical evidence and other evidence of record. (Doc. 17 at 6-7).

As part of his duty to fully and fairly develop the record, an ALJ has a duty to investigate the possible side effects of medication taken by a claimant. *See Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). However, it is a claimant's obligation to "introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). "When there is no evidence that a claimant is taking medications that cause side-effects, the ALJ is not required to elicit testimony or make findings regarding the effect of medications on the claimant." *Lipscomb v. Comm'r of Soc. Sec.*, 199 F.

App'x 903, 906 (11th Cir. 2006) (citing *Passopulos v. Sullivan,* 976 F.2d 642, 648 (11th Cir.1992)).

The ALJ stated he had considered "the combination of the claimant's mental and physical impairments and symptoms, both severe and non-severe, including the reasonable side effects of her medication," (tr. 23), as he was required to do by the regulations, *see* 20 C.F.R. § 404.1529(c)(3)(iv). Apart from the passage quoted above, the only mention of side effects in the ALJ's decision was in his discussion of Ware's treatment at Oasis Women's Clinic. (Tr. 22-23). The ALJ stated on a September 24, 2012 visit to the clinic, Ware "described taking Prozac and Buspar without complaints of side effect." (Tr. 22). This misstates the medical record. While the clinic's intake notes indicate Ware reported taking the medications, they only state "Taking Buspar 15 mg, Prozac 60 mg" before immediately moving on to notes about Ware's suicidal ideation. (Tr. 615). In other words, the notes are silent as to side effects rather than containing Ware's affirmative denial of side effects.

Other portions of the medical record also contain Ware's complaints of drowsiness and dizziness from her medications.[6] These include a visit to Oasis on April 8, 2013, which the ALJ discussed in the same paragraph as the intake notes above. (Tr. 22-23, 621). The ALJ cited the session notes at this visit to show Ware was "feeling less depressed," (tr. 23), but omits that Ware reported she "takes 14 pills a day and they make her drowsy so she sleeps often during the day — especially before noon," (tr. 621). Ware's subsequent visits to Oasis mirrored this complaint. On

---

[6] The Commissioner notes that Ware "does not cite a single treatment note in this voluminous record documenting any complaint to a treating physician of side effect," (doc. 17 at 7-8), but this does not mean the court may shirk its "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding," *Walden*, 672 F.2d at 838.

7

a September 11, 2013, visit to Oasis, Ware's session notes state Ware "continues to take her many medications. Many of them cause drowsiness so she has to be careful how she takes them." (Tr. 687-88). Two weeks later, on September 25, 2013, Ware visited Oasis again and reported she "continues to struggle with pain and with drowsiness from her meds." (Tr. 686-87).

Apart from the medical record, Ware points to a September 7, 2012 function report in which she stated her medication makes her sleep. (Tr. 370). Ware also highlights a disability report dated November 21, 2012, in which she indicated she experienced drowsiness as a side effect of Buspar, lisinopril, Neurontin, promethazine, Prozac, Robaxin, and Sulindac. (Tr. 385). Ware also notes she reported drowsiness as a side effect of her medications to Dr. Sharon D. Waltz, a psychological consultative examiner, (tr. 606), and that a medical source statement completed five months after Ware's DLI in which Dr. Nassif Cannon, one of Ware's treating physicians, indicated side effects could "limit [Ware's] effectiveness due to distraction, inattention, drowsiness, etc," (tr. 666). Finally, Ware mentioned drowsiness as a side effect at both the December 6, 2013 hearing and the April 5, 2016 hearing. At the 2013 hearing, asked about side effects from her medication, Ware stated: "I be drowsy. I be dizzy." (Tr. 91). And at the 2016 hearing, Ware indicated tiredness was a side effect of her medications, (tr. 49-50), and that her pain medications cause dizziness and drowsiness, (tr. 59).

The undersigned notes some of this evidence postdates Ware's DLI and that the ALJ specifically rejected evidence after that date because it did "not relate back to the claimant's mental and physical health status as of December 31, 2012." (Tr. 23). However, Ware's complaints of drowsiness as a medication side effect clearly predate Ware's DLI — at a minimum, in her September 7, 2012 and November 21, 2012 function reports, (tr. 370 & 385), and her report to Dr. Waltz, (tr. 606). And notwithstanding the ALJ afforded Dr. Cannon's opinion little weight, (tr.

8

24), his decision to do so was based on the fact that the opinion was "rendered long after the claimant's date last insured and . . . do[es] not specifically relate back to her condition at that time."[7] (Tr. 24). In the case of side effects Ware complained of before her DLI, this does not necessarily follow.

On this record, the ALJ's brief, formulaic recitation that he considered side effects cannot excuse his failure to address the specific side effects Ware alleged. The Commissioner relies on *Lipscomb v. Comm'r of Soc. Sec.*, 199 F. App'x 903 (11th Cir. 2006), for the proposition that this was sufficient, but in that case the ALJ specifically addressed the symptoms (dizziness and lightheadedness) before concluding the claimant's testimony did not support limitations flowing from them; the court found "it was unnecessary for the ALJ to discuss specifically each potential cause of [the claimant's] dizziness when determining the scope of [her] limitations. *Id.* at 906. Here, by contrast, the ALJ did not mention drowsiness at all, and the only discussion of side effects

---

[7] The Commissioner states that Ware has waived any objection to the weight the ALJ gave Dr. Cannon's opinion, supporting this by citing *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013), and *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998). (Doc. 17 at 8 n.5). Even assuming Ware's reference to Dr. Cannon's opinion is not intended to challenge the fact the ALJ rejected it, both of these cases involve a party's failure to brief issues on appeal to the Eleventh Circuit consistent with the Federal Rules of Appellate Procedure, resulting in waiver. Although the Eleventh Circuit has held the rule "applies with equal force in social security appeals," *Buttram v. Comm'r of Soc. Sec.*, 594 F. App'x 569, 572 (11th Cir. 2014), courts in this district have concluded the rule "applies to briefs filed in the federal *circuit* court, not briefs filed in the federal *district* court." *Weems v. Astrue*, No. 3:11-CV-03083-KOB, 2012 WL 2357743, at *8 (N.D. Ala. June 19, 2012). Consequently, courts in this district have generally "reviewed the record to determine whether the ALJ properly applied legal standards and supported his factual conclusions with substantial evidence," even when a plaintiff does not file a brief. *Id. See also Williams v. Colvin*, No. 4:15-CV-0906-JEO, 2016 WL 4180896, at *6 (N.D. Ala. Aug. 8, 2016), *aff'd sub nom. Williams v. Comm'r, Soc. Sec. Admin.*, 703 F. App'x 780 (11th Cir. 2017) (declining to find an issue waived when plaintiff raised it, albeit in a perfunctory manner, and did not respond to Commissioner's argument the issue was waived).

within the ALJ's consideration of the evidence misreads the record. Nor can the Commissioner reasonably claim, as she does, that Ware has failed "to provide evidence to support her allegations of side effects from her medications," insulating the ALJ from the need to specifically address those side effects, (doc. 17 at 9); as discussed above, the record contains evidence demonstrating Ware's complaints of drowsiness and dizziness. Further, this evidence undermines the Commissioner's argument the ALJ implicitly found Ware's allegations of side effects not credible. (Doc. 17 at 9). The ALJ's rationale for rejecting Ware's subjective statements was that they were "not entirely consistent with the medical evidence and other evidence in the record," (tr. 19), but the ALJ's only finding inconsistent with Ware's claims of side effects was, as stated above, his erroneous implication Ware had reported none. This does not provide substantial evidence to support the ALJ's implicit rejection of Ware's claims of drowsiness. *See McDevitt v. Comm'r of Soc. Sec.*, 241 F. App'x 615, 619 (11th Cir. 2007) (remanding where ALJ mistakenly indicated the claimant had not claimed concentration problems as a medication side effect and had "made no finding, as to credibility or otherwise," regarding this claim).

An ALJ must provide something for the court to conclude he considered a claimant's side effects. *See McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986). Here, the ALJ did not. Accordingly, remand is necessary. On remand, the ALJ should specifically consider Ware's claims of drowsiness and dizziness as a side effect of her medications, including whether her allegations of side effects postdating her DLI relate back to the period on or prior to that date.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Ware's

claim for a period of disability and DIB is **REVERSED** and this action is **REMANDED** for proceedings consistent with this opinion.

DONE this 25th day of March, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE